IN THE COURT OF COMMON PLEAS OF CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| Plante & Moran, PLLC<br>1111 Superior Avenue, Suite 1250<br>Cleveland, Ohio 44114, | )<br>)<br>) | CASE NO.<br><br>Hon. |
| Plaintiff, | ) | COMPLAINT |
| v. | ) | Douglas W. King (0055528)<br>Frederickson, Heintschel & King |
| Woodhaven Village, LLC<br>408 W. 17th Street, Office 101<br>Austin, Texas 78701-1293 | )<br><br>) | Co., L.P.A.<br>405 Madison Avenue, Suite 1212<br>Toledo, Ohio 43604<br>Telephone: (419) 242-5100 |
| Defendant | ) | Fax: (419) 242-5556<br>Attorneys for Plaintiff |
| | ) | |

\*\*\*

Now comes Plaintiff Plante & Moran, PLLC ("Plaintiff" or "Plante Moran"), by and through its attorneys, and for its Complaint against Defendant Woodhaven Village, LLC ("Defendant" or "Woodhaven") states and avers as follows:

## COUNT I

(Breach of Contract)

1. Plante Moran is a regional certified public accounting and business advisory firm with offices throughout the Midwest including an office in Cleveland, Ohio.

2. During 2013, Woodhaven was engaged in the development of an assisted living facility in Conroe, Texas (the "Project").

Electronically Filed 05/28/2019 15:12 / / CV 19 915960 / Confirmation Nbr. 1721256 / CLSK1



EXHIBIT A

3. Woodhaven intended to finance the Project by the issuance of tax exempt bonds.

4. In early 2013, Woodhaven, through its bond issuer, initiated contact with Plante Moran regarding the engagement of Plante Moran to provide a financial feasibility study to support the bond financing of the Project.

5. After negotiations regarding the services to be provided, the parties entered into a written agreement in the form of an Engagement Letter which incorporated a Professional Service Agreement (collectively, "Agreement"). A copy of the Agreement is attached hereto as Exhibit 1.

6. The Agreement required Plante Moran to provide certain services to Woodhaven including a base financial model, market and demographic analysis and feasibility study.

7. After entering into the Agreement, Plante Moran began to perform the services called for under the Agreement.

8. Plante Moran performed its obligations under the Agreement.

9. Woodhaven refused to pay the balance due under the Agreement.

10. Woodhaven has breached the Agreement.

11. Woodhaven's breach of contract has proximately caused Plante Moran to suffer damages in an amount not less than One Hundred Twenty-Eight Thousand Two Hundred Twelve and 50/100 Dollars ($128,212.50).

## COUNT II

(Action on Account)

12. Plante Moran incorporates by reference the averments contained in the preceding paragraphs as if fully set forth herein.

13. Woodhaven engaged the services of Plante Moran under which Plante Moran routinely provided Woodhaven with statements for the amounts charged for the services provided to Woodhaven.

14. True and accurate statements of the account for services provided by Plante Moran to Woodhaven are attached hereto as Exhibit 2.

15. Because of Woodhaven's failure to pay on the account, the balance in an amount not less than $128,212.50 remains due and payable by Woodhaven to Plante Moran.

16. Based on the account, Woodhaven is liable to Plante Moran in an amount not less than One Hundred Twenty-Eight Thousand Two Hundred Twelve and 50/100 Dollars ($128,212.50).

## COUNT III

### (Promissory Estoppel)

17. Plante Moran incorporates by reference the averments contained in the preceding paragraphs as if fully set forth herein.

18. Woodhaven promised Plante Moran that it would pay for all services provided to Woodhaven under the Agreement.

19. Woodhaven would have reasonably expected Plante Moran to rely on its promise under the Agreement and Plante Moran did rely on that promise in providing services to Woodhaven.

20. Woodhaven failed to pay Plante Moran as promised thus causing Plante Moran to suffer damages in an amount not less than One Hundred Twenty-Eight Thousand Two Hundred Twelve Thousand and 50/100 Dollars ($128,212.50).

21. Enforcement of Woodhaven's promise is necessary to avoid injustice.

## COUNT IV

### (Unjust Enrichment)

22. Plante Moran incorporates by reference the averments contained in the preceding paragraphs as if fully set forth herein.

23. Plante Moran provided services to Woodhaven with a reasonable value in excess of One Hundred Twenty-Eight Thousand and 00/100 Dollars ($128,000.00).

24. Woodhaven knew about and accepted the services provided to it and benefited from its receipt of those services.

25. It would be unjust and/or inequitable to permit Woodhaven to retain the benefit of the services provided without paying Plante Moran the amount owed which is in excess of One Hundred Twenty-Eight Thousand and 00/100 Dollars ($128,000.00).

WHEREFORE, Plaintiff Plante & Moran, PLLC demands judgment against Defendant Woodhaven Village, LLC in an amount not less than One Hundred Twenty-Eight Thousand Two Hundred Twelve and 50/100 Dollars ($128,212.50) plus pre- and post-judgment interest, costs incurred and for such other relief as the court may deem necessary and appropriate.

Respectfully submitted,

*/s/ Douglas W. King*

Douglas W. King (0055528)
Attorneys for Plaintiff
Plante & Moran, PLLC



Plante & Moran, PLLC
Eaton Center
Suite 1750
1111 Superior Ave
Cleveland, OH 44114
Tel: 216.523.1010
Fax: 216.523.1029
plantemoran.com

March 26, 2013

Mr. Antonio Padua, Vice President/General Manager
Woodhaven Village, LLC
5599 San Felipe, Suite 911
Houston, Texas 77056

Re: *Engagement Letter for Examination of a Forecast for Woodhaven Village*

Dear Tony:

We are complimented by your selection of our firm to assist you. We are sending this letter and the accompanying Professional Services Agreement, which is hereby incorporated as part of this engagement letter, to confirm our understanding of the nature, limitations and terms of the services we will provide to Woodhaven Village, LLC to provide these services.

**Project Understanding**

We understand Woodhaven Village, LLC is looking to develop an Independent Living and Assisted Living campus in Conroe, Texas named Woodhaven Village. Woodhaven Village, LLC is working with HJ Sims to issue tax-exempt non-rated fixed rate bonds, with the possibility of a small amount of taxable bonds. It is our understanding that the Woodhaven Village project will require an examination of a forecast to achieve this plan of finance.

**Scope of Services**

We will examine, in accordance with attestation standards established by the American Institute of Certified Public Accountants, from information management provides, Woodhaven Village's forecasted statements of financial position and related forecasted statements of activities, changes in net assets, and cash flows, including the significant forecast assumptions and significant risk factors for the years ending December 31, 2013 to 2017. We will examine the financial forecast for the purpose of issuing a report stating whether, in our opinion, (a) management's financial forecast is presented in conformity with applicable guidelines established by the American Institute of Certified Public Accountants and (b) management's assumptions provide a reasonable basis for its forecast.

The preparation of a financial feasibility study includes the following:

- Preparation of a base financial model from key assumptions and other information provided by your management team, which will include a 5 year presentation of the statements of financial position, activities, cash flow, and key financial ratios.

- Preparation of a market and demographic analysis which is incorporated into the examination. To the extent that we are able to utilize market analysis already completed by MDS Research

Mr. Antonio Padua, Vice President/General Manager
Woodhaven Village, LLC
March 26, 2013

Company, we will do so, and pass through any savings to you. However, the market determination is a key assumptions and the information provided in any previous market analysis may not be adequate for report purposes, or not be current enough to use.

- Preparation of the feasibility study, which incorporates the base financial model, market data, project narrative and required disclosures in accordance with AICPA standards.
- Sensitivity analyses as requested, limited to two analyses.
- We will communicate with representatives from HJ Sims to ensure our report incorporates information that is helpful to the anticipated bond issuance process.

Our examination report will detail the nature of reservations (if any) we have about the forecast. Should any such reservations develop, we will discuss them with you before the report is issued.

Release of the final report will be subject to the following:

- Receipt of a signed copy of the guaranteed maximum price construction contracts (GMP) or other evidence satisfactory to us of the forecasted cost of construction.
- The market and demographic analysis for the examination demonstrates a market of sufficient age and income qualified individuals to support the project

At the conclusion of the engagement, management agrees to supply us with a representation letter that among other things, will confirm management's responsibility for the underlying assumptions and the appropriateness of the financial forecast and its presentation.

### Fees and Payment Terms

Our base fee for this engagement will be based on the value of the services provided, which is primarily a function of the time that Plante Moran staff expend at our standard hourly rates. We estimate that our fee for this engagement will be $60,000, which includes all travel costs and out-of-pocket expenses.

The base fee includes three drafts and one final report. Fees for additional drafts or scenarios will be billed separately. Each additional draft will be billed at between $2,500 and $5,000 depending on scope of changes and may require one week to complete.

The base fee includes two sensitivity analyses. Each additional sensitivity analysis will be billed at $2,500.

The base fee assumes that our report is issued within 8 weeks of receiving all requested information.

The base fee includes one on-site meeting, one market study visit and phone calls to review information requests and related drafts of the feasibility study. Our process will also include a team updating the market study and would also be out at the site and the primary market area.

We require a retainer of $10,000 before starting work. This retainer will be applied to our final invoice for this engagement.

Mr. Antonio Padua, Vice President/General Manager
Woodhaven Village, LLC
March 26, 2013

Invoices for forecast services will be rendered monthly and per our agreement are due no later than bond closing or funding of the financing for the project.

If you are in agreement with our understanding of this engagement, as set forth in this engagement letter and the accompanying Professional Services Agreement, please sign the enclosed copy of this letter and return it to us with the accompanying Professional Services Agreement.

Thank you for the opportunity to serve you.

Very truly yours,
**PLANTE & MORAN, PLLC**

*Pat McCormick*

Patrick McCormick, CPA
Partner

**Agreed and Accepted**

We accept this engagement letter and the accompanying Professional Services Agreement, which set forth the entire agreement between Woodhaven Village, LLC and Plante Moran, PLLC with respect to the services specified in the Scope of Services section of this engagement letter.

Woodhaven Village, LLC
by: Woodhaven Village Manager, LLC

_____     4/3/13
Antonio Padua                              Date

____Manager____
Title

## Professional Services Agreement – Examination of a Forecast
## Addendum to Plante Moran, PLLC Engagement Letter Dated March 26, 2013

This Professional Services Agreement is part of the engagement letter for examination services dated March 26, 2013 between Plante & Moran, PLLC (referred to herein as "PM") and Woodhaven Village Realty (referred to herein as "Woodhaven Village").

1. **Examination of a Financial Forecast** – The financial forecast of Woodhaven Village being examined by Plante Moran, PLLC (referred to herein as "PM," "we," "our," or "us") is to be presented in accordance with accounting principles generally accepted in the United States of America (Applicable Financial Reporting Framework). We will examine the financial forecast for the purpose of issuing a report stating whether, in our opinion, (a) management's financial forecast is presented in conformity with applicable guidelines established by the AICPA, and (b) management's assumptions provide a reasonable basis for its forecast. Woodhaven Village (also referred to herein as "you" or "your") management is responsible for the presentation of the examined forecast, including compliance with the requirements of the AICPA and accounting principles generally accepted in the United States of America. Woodhaven Village agrees that it is responsible for all assumptions made as a part of the forecast. Woodhaven Village understands and agrees that the assumptions must have a reasonable and objective basis and reflect conditions it expects would exist and the courses of action it expects it would take. Woodhaven Village is also responsible for the capability and integrity of Woodhaven Village's personnel responsible for Woodhaven Village providing the underlying assumptions.

2. **Examination Procedures and Objective** – Our examination will be conducted in accordance with attestation standards established by the America Institute of Certified Public Accountants. Our examination of the financial forecast will include procedures we consider necessary to evaluate (a) the assumptions used by management as a basis for the financial forecast, (b) the preparation of the financial forecast, and (c) the presentation of the financial forecast. Our report will detail the nature of reservations (if any) we have about the forecast. Should any such reservations develop, we will discuss them with you before the report is issued. If, for any reason, we are prevented from completing our examination of this financial forecast, we may terminate our engagement and decline to issue our report. After the date of our report on the financial forecasts, we have no obligation to make any further or continuing inquiry or perform any other procedures with respect to the compiled financial forecasts covered by our report.

3. **Limitations of Forecast** – A financial forecast is intended to present, to the best of management's knowledge and belief, the Woodhaven Village's expected financial position, results of operations, and cash flows for the forecast period. It is based on management's assumptions reflecting conditions it expects would exist and courses of action it expects would be taken during the forecast period. Management is responsible for representations about its plans and expectations and for disclosure of significant information that might affect the ultimate realization of the forecasted results.

    There will be differences between the forecasted and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material. Our report will contain a statement to that effect. We have no responsibility to update our report for events and circumstances occurring after the date of our report.

4. **Adjustments to Forecast** – PM will recommend any adjustments to Woodhaven Village's forecasts that PM believes are appropriate. Woodhaven Village management is responsible for adjusting Woodhaven Village's accounting records and financial statements to correct misstatements. In order for us to complete this engagement, management must provide assumptions that are appropriate for the forecast. If the assumptions provided are inappropriate and have not been revised to our satisfaction, we will be unable to complete the engagement and, accordingly, we will not complete the forecast or issue a report on it.

5. **Management Responsibilities.** – Woodhaven Village's management is responsible for the preparation and fair presentation of these financial forecasts in accordance with the applicable financial reporting framework and the completeness and accuracy of the information presented therein. Management is also agrees that it is responsible for all implicit and explicit representations regarding the assumptions and the conditions it expects would exist and courses of action it expects would be taken during the forecast period. Woodhaven Village understands and agrees that the assumptions, unless clearly identified as hypothetical, must have a reasonable and objective basis and reflect conditions it expects would exist and the courses of action it expects it would take. Woodhaven Village is also responsible for the capability and integrity of Woodhaven Village's personnel responsible for Woodhaven Village's providing the underlying assumptions. Woodhaven Village's personnel will provide PM with information that PM may request from management for the purpose of the examination, in a timely and orderly manner. This includes access to all information of which management is aware that is relevant to the preparation and fair presentation of the forecasts, such as records, documentation, and other information. This includes retrieval of records and preparation of schedules and analyses of accounts. A written request for information to be provided will be submitted under separate cover and supplemented by additional written and oral requests as necessary during the course of PM's examination. In addition, Woodhaven Village will

*Professional Services Agreement – Examination of a Forecast*

provide PM with all information in its possession that has a material impact on any material transaction and that information will be complete, truthful, and accurate. Woodhaven Village will allow PM unrestricted access to personnel within the company from whom PM determines it necessary to obtain information.

Management is responsible for making all management decisions and performing all management functions relating to the financial statements, supplementary financial information, and related notes and for accepting full responsibility for such decisions, even if PM provides advice as to the application of accounting principles or assists in drafting the financial statements, supplementary financial information, and related notes.

Management is responsible for the design and implementation of programs and controls to prevent and detect fraud, and for informing PM about all known or suspected fraud affecting the company involving (a) management, (b) employees who have significant roles in internal control, and (c) others where the fraud could have a material effect on the financial statements. Management's responsibilities include informing PM of its knowledge of any allegations of fraud or suspected fraud affecting the company received in communications from employees, former employees, regulators, or others. In addition, management is responsible for identifying and ensuring that the entity complies with applicable laws and regulations.

6. **Management Representations** – Woodhaven Village is responsible for the financial forecasts being examined and the implicit and explicit representations regarding the assumptions and the conditions it expects would exist and courses of action it expects would be taken during the forecast period. During the course of the examination, PM may request information and explanations from Woodhaven Village's officers, management and other personnel regarding accounting and financial matters, including information regarding assumptions, expected conditions, and expected courses of action. During the course of our examination, we will request information and explanations from Woodhaven Village's management regarding assumptions, conditions expected to exist, and expected courses of action. PM's examination procedures will be significantly affected by the information and explanations PM receives from management and, accordingly, false representations further increase the likelihood that material error or fraud will go undetected by PM's procedures. Accordingly, Woodhaven Village acknowledges and agrees that it will instruct each person providing information, explanations, or representations to a PM staff member to provide true and complete information, to the best of his or her knowledge and belief. It is also agreed that any deliberate misrepresentation by any director, officer or member of management, or any other person acting under the direction thereof ("Woodhaven Village Personnel"), intended to influence, coerce, manipulate, or mislead PM in the conduct of its examination of the financial statements will be considered a material breach of this agreement. In addition, as a condition of its examination engagement, Woodhaven Village agrees to indemnify and hold PM and its partners, affiliates, and employees harmless from any and all claims, including associated attorneys' fees and costs, resulting from or based on material misstatements in Woodhaven Village financial statements resulting in whole or in part from deliberate false or misleading representations, whether oral or written, made to PM by Woodhaven Village. At the conclusion of the engagement, management agrees to supply us with a representation letter, which, among other things, will confirm management's responsibility for the underlying assumptions and the appropriateness of the financial forecast and its presentation.

7. **Accounting and Financial Records** – Woodhaven Village agrees that it is responsible for providing PM with financial forecasts that are complete, accurate, and in conformity with the Applicable Financial Reporting Framework, for providing schedules and analyses of forecasted amounts or assumptions that PM requests, and for making all Woodhaven Village's financial records and related information relevant to the forecasts available to PM for purposes of PM's examination. Where PM has provided estimates of the timing of our work and completion of our engagement and issuance of PM's report, those estimates are dependent on Woodhaven Village providing PM with all such accounting and financial records, schedules, and analyses on a timely basis once requested. In the event that such records, schedules, and analyses are not complete, accurate, or in conformity with the Applicable Financial Reporting Framework, PM may have to reschedule its work, including the dates on which PM expects to complete our on-site procedures and issue our report.

In any circumstance where PM's work is rescheduled due to Woodhaven Village's failure to provide information was described in the preceding paragraph, PM offers no guarantee, express or implied, that PM will be able to meet any previously established deadlines related to the completion of our work or issuance of our report. Because rescheduling our work imposes additional costs on us, in any circumstance where we have provided estimated fees those estimated fees may be adjusted for the additional time we incur as a result of rescheduling our work. These fee adjustments will be determined in accordance with the Fee Adjustments provision of this agreement.

8. **Assistance** – As a condition of our engagement, Woodhaven Village's personnel will provide us, in a timely and orderly manner, with assistance and information we request during the course of our examination, including retrieval of records and preparation of schedules and analyses of assumptions, expected conditions, and expected courses of action. A written request for information to be provided will be submitted under separate cover and supplemented by additional written and verbal requests as necessary during the course of our examination. In addition, you will provide us with all information in

*Professional Services Agreement – Examination of a Forecast*

your possession that has a material impact on any material transaction and that information will be complete, truthful, and accurate.

9. **Use of Report** – PM's report on the financial forecasts must be associated only with the financial forecasts that were the subject of PM's examination engagement. Woodhaven Village may make copies of the examination report, but only if the entire financial forecasts (including related footnotes and supplemental information, as appropriate) are reproduced and distributed with that report. Woodhaven Village agrees not to reproduce or associate PM's examination report with any other financial statements, or portions thereof, that are not the subject of this engagement. If PM's report on the forecasts being examined is to be published in any manner or if Woodhaven Village intends to make reference to PM in a publication of any type, Woodhaven Village agrees to submit proofs of the publication to PM for review prior to such publication and cooperate with PM in PM's performance of any additional examination procedures PM deems necessary in the circumstances, the nature and extent of which will be at PM's sole discretion. Woodhaven Village acknowledges and agrees that additional fees for such work will be determined in accordance with the Fee Adjustments provision of this agreement. With regard to the electronic dissemination of compiled financial statements, including financial forecasts published electronically on Woodhaven Village's internet website, Woodhaven Village understands that electronic sites are a means to distribute information and, therefore, PM is not required to read the information contained in these sites or to consider the consistency of other information in the electronic site with the original document.

10. **Securities Offerings** – Our examination does not contemplate, and does not include, any services in connection with any offering of securities, whether registered or exempt from registration. You may not incorporate or make reference to our report in connection with any offering of debt or equity securities without our written permission.

11. **Confidentiality, Ownership, and Retention of Workpapers** – During the course of this engagement, PM and PM staff may have access to proprietary information of Woodhaven Village, including, but not limited to, information regarding trade secrets, business methods, plans, or projects. We acknowledge that such information, regardless of its form, is confidential and proprietary to Woodhaven Village, and we will not use such information for any purpose other than our forecast examination services or disclose such information to any other person or entity without the prior written consent of Woodhaven Village.

In some circumstances, we may use third-party service providers to assist us with our examination and tax return services. In order to enable these service providers to assist us in this capacity, we must disclose information to these service providers that is relevant to the services they provide. Disclosure of such information shall not constitute a breach of the provisions of this agreement.

In the interest of facilitating our services to you, we may communicate or exchange data by internet, e-mail, facsimile transmission or other method. While we use our best efforts to keep such communications and transmissions secure in accordance with our obligations under applicable laws and professional standards, you recognize and accept that we have no control over the unauthorized interception of these communications or transmissions once they have been sent, and consent to our use of these electronic devices during this engagement.

Professional standards require that we create and retain certain workpapers for engagements of this nature. All workpapers created in the course of this engagement are and shall remain the property of P&M. We will maintain the confidentiality of all such workpapers as long as they remain in our possession.

Both Woodhaven Village and PM acknowledge, however, that we may be required to make our workpapers available to regulatory authorities or by court order or subpoena. Disclosure of confidential information in accordance with requirements of regulatory authorities or pursuant to court order or subpoena shall not constitute a breach of the provisions of this agreement. In the event that a request for any confidential information or workpapers covered by this agreement is made by regulatory authorities or pursuant to a court order or subpoena, we agree to inform Woodhaven Village in a timely manner of such request and to cooperate with Woodhaven Village should you attempt, at your cost, to limit such access. This provision will survive the termination of this agreement.

We reserve the right to destroy, and it is understood that we will destroy, workpapers created in the course of this engagement in accordance with our record retention and destruction policies, which are designed to meet all relevant regulatory requirements for retention of workpapers. PM has no obligation to maintain workpapers other than for its own purposes or to meet those regulatory requirements.

Upon Woodhaven Village's written request, we may, at our sole discretion, allow others to view any workpapers remaining in our possession if there is a specific business purpose for such a review. We will evaluate each written request independently. You acknowledge and agree that we will have no obligation to provide such access or to provide copies of our workpapers, without regard to whether access had been granted with respect to any prior requests.

*Professional Services Agreement – Examination of a Forecast*

12. **Fee Estimates** – In any circumstance where we have provided estimated fees, fixed fees, or not-to-exceed fees, these estimated, fixed, or not-to-exceed fees are based on information provided by Woodhaven Village. In the event that the actual work required for this engagement varies from our estimates due to undisclosed or unforeseeable facts regarding these matters causes the actual work required for this engagement to vary from our estimates, our estimated fees will be adjusted for the additional time we incur as a result. PM will endeavor to advise Woodhaven Village in the event these circumstances occur, however it is acknowledged that the exact impact on the Fee Quote may not be determinable until the conclusion of the engagement. Such fee adjustments will be determined in accordance with the Fee Adjustments provision of this agreement.

13. **Payment Terms** – PM's invoices for forecast examination services are due on the agreed-upon dates. Other invoices are due upon receipt. In the event any of PM's invoices are not paid in accordance with the terms of this agreement, PM may elect, at PM's sole discretion, to suspend work until PM receives payment in full for all amounts due or terminate this engagement. In the event that work is suspended, for nonpayment or other reasons, and subsequently resumed, PM offers no guarantee, express or implied, that PM will be able to meet any previously established deadlines related to the completion of PM's forecast examination work or issuance of PM's examination report forecast upon resumption of PM's work. Woodhaven Village agrees that in the event PM stops work or terminates this Agreement as a result of Woodhaven Village's failure to pay fees on a timely basis for services rendered by PM as provided in this Agreement, or if PM terminates this Agreement for any other reason, PM shall not be liable for any damages that occur as a result of PM ceasing to render services.

14. **Fee Adjustments** – Any fee adjustments for reasons described elsewhere in this agreement will be determined based on the actual time that P&M staff expend at PM's current hourly rates, , plus all reasonable and necessary travel and out-of-pocket costs incurred, and included as an adjustment to our invoices related to this engagement. Woodhaven Village acknowledges and agrees that payment for all such fee adjustments will be made in accordance with the payment terms provided in this agreement.

15. **Termination of Engagement** – This agreement may be terminated by either party upon written notice. Upon notification of termination, our services will cease and our engagement will be deemed to have been completed. You will be obligated to compensate us for all time expended and to reimburse us for all out-of-pocket expenditures through the date of termination of this engagement.

16. **Governing Law** – This agreement shall be governed by and construed in accordance with the laws of the State of Ohio.

**End of Agreement – Examination of a Forecast Services**

Professional Services Agreement                    Page 4 of 4

Electronically Filed 05/28/2019 15:12 / / CV 19 915960 / Confirmation Nbr. 1721256 / CLSK1



**Plante & Moran PLLC**
3000 Town Center
Suite 400
Southfield, MI 48075
Tel 248.352.2500
Fax 248.352.0018

## STATEMENT

Padua Realty Company
5599 San Felipe, Suite 911
Houston, TX 77056

Date: 04/02/2019
Client No: 103973
Page: 1

| Date | Description | Debit | Credit | Balance |
|---:|---|---:|---:|---:|
| 5/8/2013 | Invoice 1065984 | 17,000.00 | | 17,000.00 |
| 6/6/2013 | Invoice 1071992 | 23,000.00 | | 40,000.00 |
| 7/31/2013 | Finance Charge | 212.50 | | 40,212.50 |
| 8/31/2013 | Finance Charge | 500.00 | | 40,712.50 |
| 9/24/2013 | Invoice 1094828 | 20,000.00 | | 60,712.50 |
| 9/30/2013 | Finance Charge | 500.00 | | 61,212.50 |
| 10/31/2013 | Finance Charge | 500.00 | | 61,712.50 |
| 11/30/2013 | Finance Charge | 750.00 | | 62,462.50 |
| 12/23/2013 | Invoice 1116943 | 10,000.00 | | 72,462.50 |
| 12/31/2013 | Finance Charge | 750.00 | | 73,212.50 |
| 1/31/2014 | Finance Charge | 750.00 | | 73,962.50 |
| 2/28/2014 | Finance Charge | 875.00 | | 74,837.50 |
| 3/31/2014 | Finance Charge | 875.00 | | 75,712.50 |
| 4/30/2014 | Finance Charge | 875.00 | | 76,587.50 |



Electronically Filed 05/28/2019 15:12 /  / CV 19 915960 / Confirmation Nbr. 1721256 / CLSK1

# EXHIBIT 2

Padua Realty Company  
5599 San Felipe, Suite 911  
Houston, TX 77056

Date: 04/02/2019  
Client No: 103973  
Page: 2

| Date | Description | Debit | Credit | Balance |
|---|---|---|---|---|
| 5/31/2014 | Finance Charge | 875.00 | | 77,462.50 |
| 6/30/2014 | Finance Charge | 875.00 | | 78,337.50 |
| 7/31/2014 | Finance Charge | 875.00 | | 79,212.50 |
| 8/31/2014 | Finance Charge | 875.00 | | 80,087.50 |
| 9/30/2014 | Finance Charge | 875.00 | | 80,962.50 |
| 10/31/2014 | Finance Charge | 875.00 | | 81,837.50 |
| 11/30/2014 | Finance Charge | 875.00 | | 82,712.50 |
| 12/31/2014 | Finance Charge | 875.00 | | 83,587.50 |
| 1/31/2015 | Finance Charge | 875.00 | | 84,462.50 |
| 2/28/2015 | Finance Charge | 875.00 | | 85,337.50 |
| 3/31/2015 | Finance Charge | 875.00 | | 86,212.50 |
| 4/30/2015 | Finance Charge | 875.00 | | 87,087.50 |
| 5/31/2015 | Finance Charge | 875.00 | | 87,962.50 |
| 6/30/2015 | Finance Charge | 875.00 | | 88,837.50 |
| 7/31/2015 | Finance Charge | 875.00 | | 89,712.50 |
| 8/31/2015 | Finance Charge | 875.00 | | 90,587.50 |
| 9/30/2015 | Finance Charge | 875.00 | | 91,462.50 |
| 10/31/2015 | Finance Charge | 875.00 | | 92,337.50 |


plante moran

Padua Realty Company  
5599 San Felipe, Suite 911  
Houston, TX 77056

Date: 04/02/2019  
Client No: 103973  
Page: 3

| Date | Description | Debit | Credit | Balance |
|---:|---|---:|---:|---:|
| 11/30/2015 | Finance Charge | 875.00 | | 93,212.50 |
| 12/31/2015 | Finance Charge | 875.00 | | 94,087.50 |
| 1/31/2016 | Finance Charge | 875.00 | | 94,962.50 |
| 2/29/2016 | Finance Charge | 875.00 | | 95,837.50 |
| 3/31/2016 | Finance Charge | 875.00 | | 96,712.50 |
| 4/30/2016 | Finance Charge | 875.00 | | 97,587.50 |
| 5/31/2016 | Finance Charge | 875.00 | | 98,462.50 |
| 6/30/2016 | Finance Charge | 875.00 | | 99,337.50 |
| 7/31/2016 | Finance Charge | 875.00 | | 100,212.50 |
| 8/31/2016 | Finance Charge | 875.00 | | 101,087.50 |
| 9/30/2016 | Finance Charge | 875.00 | | 101,962.50 |
| 10/31/2016 | Finance Charge | 875.00 | | 102,837.50 |
| 11/30/2016 | Finance Charge | 875.00 | | 103,712.50 |
| 12/31/2016 | Finance Charge | 875.00 | | 104,587.50 |
| 1/31/2017 | Finance Charge | 875.00 | | 105,462.50 |
| 2/28/2017 | Finance Charge | 875.00 | | 106,337.50 |
| 3/31/2017 | Finance Charge | 875.00 | | 107,212.50 |
| 4/30/2017 | Finance Charge | 875.00 | | 108,087.50 |


plante moran

Padua Realty Company
5599 San Felipe, Suite 911
Houston, TX 77056

Date: 04/02/2019
Client No: 103973
Page: 4

| Date | Description | Debit | Credit | Balance |
|---:|---|---:|---|---:|
| 5/31/2017 | Finance Charge | 875.00 | | 108,962.50 |
| 6/30/2017 | Finance Charge | 875.00 | | 109,837.50 |
| 7/31/2017 | Finance Charge | 875.00 | | 110,712.50 |
| 8/31/2017 | Finance Charge | 875.00 | | 111,587.50 |
| 9/30/2017 | Finance Charge | 875.00 | | 112,462.50 |
| 10/31/2017 | Finance Charge | 875.00 | | 113,337.50 |
| 11/30/2017 | Finance Charge | 875.00 | | 114,212.50 |
| 12/31/2017 | Finance Charge | 875.00 | | 115,087.50 |
| 1/31/2018 | Finance Charge | 875.00 | | 115,962.50 |
| 2/28/2018 | Finance Charge | 875.00 | | 116,837.50 |
| 3/31/2018 | Finance Charge | 875.00 | | 117,712.50 |
| 4/30/2018 | Finance Charge | 875.00 | | 118,587.50 |
| 5/31/2018 | Finance Charge | 875.00 | | 119,462.50 |
| 6/30/2018 | Finance Charge | 875.00 | | 120,337.50 |
| 7/31/2018 | Finance Charge | 875.00 | | 121,212.50 |
| 8/31/2018 | Finance Charge | 875.00 | | 122,087.50 |
| 9/30/2018 | Finance Charge | 875.00 | | 122,962.50 |
| 10/31/2018 | Finance Charge | 875.00 | | 123,837.50 |


plante moran

Padua Realty Company  
5599 San Felipe, Suite 911  
Houston, TX 77056

Date: 04/02/2019  
Client No: 103973  
Page: 5

| Date | Description | Debit | Credit | Balance |
|---|---|---:|---|---:|
| 11/30/2018 | Finance Charge | 875.00 | | 124,712.50 |
| 12/31/2018 | Finance Charge | 875.00 | | 125,587.50 |
| 1/31/2019 | Finance Charge | 875.00 | | 126,462.50 |
| 2/28/2019 | Finance Charge | 875.00 | | 127,337.50 |
| 3/31/2019 | Finance Charge | 875.00 | | 128,212.50 |

**Total Balance Due:** 128,212.50 USD

| Current | 31 - 60 Days | 61 - 90 Days | Over 90 Days | Total |
|---:|---:|---:|---:|---:|
| 875.00 | 875.00 | 875.00 | 125,587.50 | 128,212.50 USD |

A late charge will be added for any portion of an invoice not paid within 30 days. The late charge will be computed at the rate of 1.25% per month, starting 30 days after the date of the invoice.

**Remittance Information:**

| Check: | Wire Transfer: | ACH: |
|---|---|---|
| Plante & Moran PLLC | Bank: Bank of America | Bank of America |
| 16060 Collections Center Drive | Routing/ABA# 026009593 | 071000039 |
| Chicago, IL 60693 | Bank Address 100 West 33rd Street, New York, NY 10001 | 100 West 33rd Street, New York, NY 10001 |
| | Account Number 9890996003 | 9890996003 |
| | Account Name Plante & Moran PLLC | Plante & Moran PLLC |

plante moran